No. 47,634

ARETHA JONES, *Appellant,* v. In the Matter of the Estate of Walter H. Cooper, Deceased, *Appellee.*

(533 P. 2d 1273)

Opinion filed April 5, 1975.

*Willard B. Snyder* and *Donald C. Little,* of Kansas City, Kansas, argued the cause and were on the brief for the appellant.

*James P. Davis,* of Kansas City, Kansas, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: Plaintiff, Aretha Jones, appeals from a judgment of the trial court denying her action for specific performance of an oral contract to leave to plaintiff all property owned by decedent, Walter Cooper, in return for services rendered by plaintiff. The trial court found that plaintiff failed to establish by clear and convincing evidence the existence of a contract and that she

performed services for the decedent in reliance on the contract. Plaintiff contends there was no evidence to sustain the trial court's findings and a contract should not be unenforceable because of uncertainty, when one of the parties has performed his part of the contract.

Walter Cooper died intestate on June 27, 1970, leaving an estate of both real and personal property. During the year prior to his death, he became physically ill and depended on plaintiff to perform services for his benefit and to assist him in conducting his affairs. These services consisted in part of checking him out in the mornings, seeing that he had his breakfast, preparing his dinner, assisting him with his hogs, helping him in the garden, doing his washing and ironing, and doing his housework. Plaintiff was not paid for these services.

Plaintiff testified that on or about September 13, 1969, she made an oral contract with Cooper to the effect that if she would continue to look after him, he would give everything he had to her at his death. She also stated that Cooper asked her to put the agreement in writing and that he dictated to her the document subsequently introduced into evidence in the following form:

My Will

"I Walter H. Cooper in good health and sound mind do give Aretha Jones the power to take care of me in sickness and death.

"She has stood by me for over 20 yrs, and whatever I own will go to her.
"Walter Cooper

"Witnesses

"Earl E. Edlund
"Jack Moore"

Plaintiff further testified that Cooper signed this document and she retained it in her possession until a few days after his death. She stated that after Cooper's death she took the document to Mr. Moore and Mr. Edlund, who read, signed and witnessed it.

In support of her claim plaintiff offered the testimony of seven witnesses. Earl Edlund testified Cooper mentioned to him how good plaintiff was to him and that he would like to have his property go to her. Jack Moore testified Cooper told him on several occasions that he wanted plaintiff to have everything he left behind. Goins Jones testified Cooper told him he had turned everything over to plaintiff. Nelson Grubbs testified that on one occasion Cooper told him he wanted everything to go to plaintiff. George Ikert testified Cooper told him he wanted plaintiff to have his things because she was seeing after him and taking care of

him. A. Davis Bey testified Cooper told him anything he had in his possession he would leave for plaintiff and that if he had anything left he would rather plaintiff have it. Mrs. Bey testified Cooper told her plaintiff had been awful nice to him and he would like for whatever he had to go to plaintiff because he didn't have anyone else he wanted to have his property.

The administrator of the estate of Walter Cooper offered no evidence of testimony in defense of its position, so the sufficiency of the evidence to establish the claim of plaintiff is dependent upon the foregoing testimony.

In an action for specific performance of an oral contract with a person since deceased, the contract must be established by evidence that is clear and convincing. (*Bond v. Bond,* 154 Kan. 358, 118 P. 2d 549; *In re Estate of Hargreves,* 201 Kan. 57, 439 P. 2d 378; *In re Estate of Shirk,* 194 Kan. 424, 399 P. 2d 850.) "Clear and convincing evidence" is defined in *Shirk* as follows:

"The term 'clear and convincing evidence' means that the witnesses to a fact must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the details in connection with the contract must be narrated exactly and in order; the testimony must be clear, direct and weighty, and the witnesses must be lacking in confusion as to the facts at issue." (Syl. ¶ 2.)

It is not sufficient that the existence of a contract be shown by a preponderance of evidence. This strict requirement is based upon the inherent danger of fraud in claims against the estates of deceased persons. (*In re Estate of Shirk,* supra.)

A similar factual situation was presented in *In re Estate of Duncan,* 186 Kan. 427, 350 P. 2d 1112. An action for specific performance was brought to enforce an alleged oral contract between the petitioner and his deceased aunt, whereby the petitioner was to have a quarter-section of land after her death in return for the petitioner's assistance during her lifetime. The evidence offered in support of the alleged contract was the testimony of the petitioner and a memorandum in the handwriting of the decedent which indicated the petitioner was to inherit the property in question. There was also testimony of several witnesses to the effect the decedent had told them at various times that the petitioner was doing good work, that she was pleased with him, and that he was to have the quarter-section of land at her death.

Based upon this evidence, the trial court found the alleged contract had not been established, although the court recognized the

decedent probably intended to at some time will the land to the petitioner. In affirming the decision of the lower court, we stated:

". . . While testimony on behalf of the petitioner was undisputed that the decedent held him in high esteem, relied upon his judgment, and appreciated the many, many favors he performed for her, and that she made statements to the effect she was going to give him the land in controversy or that at her death it would be his or that she might want to change her will, nevertheless, there was no direct or corroborated testimony that the parties entered into a contract such as alleged by the petitioner. . . ." (p. 434.)

In speaking of the requirements of an oral contract which are asserted as the basis for specific performance of a claim against the property of a decedent, we noted that to uphold the contract it must be shown that the contract is definite in its terms, its enforcement equitable, and its performance must be established on the part of the promisee; i. e., the performance must be attributable to the alleged contract as distinguished from some other relationship between the parties. The mere fact that services of a valuable character have been performed in the expectation of a legacy is not sufficient to entitle the person performing the services to enforcement of an oral contract. It must also appear the services were performed in reliance upon a specific contractual agreement.

We pointed out the memorandum in the *Duncan* case was testamentary in character rather than contractual. The decedent had undoubtedly intended to will the land to the petitioner, but her attempt to do so was clearly ineffective. Having failed in that endeavor, this court was powerless to change her will after death. Although there were circumstances which, if believed by the trial court, might have justified the reasonable inference that a contract was entered into, they were insufficient to require a reversal of the trial court's judgment.

Much the same result was reached by this court in *In re Estate of Shirk*, supra; *Nash v. Harrington*, 110 Kan. 636, 205 Pac. 354; *In re Estate of Winters*, 192 Kan. 518, 389 P. 2d 818; and *In re Estate of Mueseler*, 188 Kan. 407, 362 P. 2d 653. Each of these cases stands for the proposition that there must be evidence of a contract, and not just testimony of the decedent's intent to devise his property as a reward for services.

Plaintiff cites the cases of *In re Estate of Wert*, 165 Kan. 49, 193 P. 2d 253; *In re Estate of Hargreaves*, supra; and *In re Estate of Dull*, 184 Kan. 233, 336 P. 2d 435, in support of her claim. In each of the cited cases it was concluded the evidence justified a decree

of specific performance. The evidence in these cases was more substantial than the evidence in the instant case. The difference in substance was to the extent that we cannot consider the cited cases as authority to support plaintiff's contentions.

The only evidence supporting the existence of a contract in this case is the testimony of plaintiff, and whatever significance may be given to the document signed by the decedent. None of the witnesses presented by plaintiff testified as to the existence of a contract. The most that can be said as to their testimony is that they heard the decedent say plaintiff had been good to him and he wanted her to have his property. The document signed by decedent does not provide the essential elements of a contract. The document is more testamentary in context than contractual. It evidences a desire of Cooper to reward plaintiff for services rendered rather than a fulfillment of an agreement. Some significance could be given to the fact plaintiff was not paid by decedent for her services. The failure to pay for services is consistent with the existence of a contract, but this fact in itself does not prove a contract was made.

There was no testimony that plaintiff performed services for the decedent in fulfillment of the oral contract. To the contrary, there was testimony that plaintiff performed the same services and assisted the decedent in much the same manner prior to the date of the oral contract. As previously stated, in order to enforce an oral contract on the basis of the performance of the promisee, it is essential that the performance be attributable to the alleged contract as distinguished from some other relationship.

It was the function of the trial court to determine from all the facts and circumstances whether there was a contract between the parties. Under the facts in this case we cannot say the trial court's conclusion was contrary to the evidence or that there was no evidence in the record to support it. We realize the effect of the trial court's decision was a determination that plaintiff had failed to meet the burden of proof. We considered this point in *Fox v. Wilson*, 211 Kan. 563, 507 P. 2d 252, and developed the following rule:

"The effect of a negative finding is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary and capricious disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice on the part of the trial judge, the finding cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief

of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed." ( Syl. ¶ 8.)

We conclude the finding of the trial court should not be disturbed and the judgment is affirmed.

FROMME, J., not participating.